1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EDWARD B. SPENCER,                          Case No. 1:20-cv-00909-JLT-HBK (PC)

12                 Plaintiff,                     FINDINGS AND RECOMMENDATIONS TO
                                                  GRANT DEFENDANT'S MOTION FOR
13        v.                                      SUMMARY JUDGMENT[1]

14   J. JASSO,                                    FOURTEEN-DAY OBJECTION PERIOD

15                 Defendant.                     (Doc. No. 31)

16

17         This case was reassigned to the undersigned on July 3, 2025.  (Doc. No. 62).  Pending

18   before the Court is Defendant's Motion for Summary Judgment filed on November 27, 2023.

19   (Doc. No. 31, "MSJ").  Finding no material facts in dispute, the undersigned recommends that the

20   district court grant Defendant's MSJ on Plaintiff's First and Fourteenth Amendment claims for

21   the reasons set forth below.

22                              **I.  BACKGROUND**

23        **A.  Procedural History and Allegations in Operative Complaint**

24         On June 30, 2020, Plaintiff Edward Spencer initiated this action stemming from events

25   that occurred while he was confined at the California Department of Corrections and

26   Rehabilitation ("CDCR") Substance Abuse Treatment Facility and State Prison ("SATF").  (Doc.

27   _____

28   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2025).

No. 1).  On October 18, 2021, Plaintiff filed his First Amended Complaint.  (Doc. No. 12, "FAC").  On January 9, 2023, the previously assigned magistrate judge recommended that this action proceed solely against Defendant Jasso on: (1) Plaintiff's First Amendment retaliation claim, (2) Plaintiff's First Amendment withholding of mail claim; and (3) Plaintiff's Fourteenth Amendment due process claim related to his withholding of mail without notice.  (Doc. No. 15).  On January 17, 2023, Plaintiff filed a notice electing to proceed solely on the three above claims found cognizable.  (Doc. No. 16).  On February 2, 2023, the District Judge adopted the magistrate's findings and recommendations in full.  (Doc. No. 17).

In his FAC, Plaintiff alleges that while housed at SATF, Defendant J. Jasso, a mailroom employee at SATF, violated his constitutional rights by retaliating against him for filing grievances and by withholding his mail.  (Doc. 12 at 7–9, 13–15).  Plaintiff further claims Jasso violated his due process rights because the withholding of his mail violated Title 15 § 3133(a)(1), which requires delivery of First-Class mail within seven calendar days of receipt.  (*Id*. at 10–12).

In support of his claims, Plaintiff states he submitted an inmate grievance against mailroom staff and custody officials on March 25, 2019, and afterwards, Defendant Jasso began delaying his incoming and outgoing mail without justification.  (*Id*. at 8–9, 16).  Between September 4, 2019, and March 27, 2020, Plaintiff identified 19 instances of mail being withheld for periods ranging from 16 to 127 days, in violation of Title 15.  (*Id*. at 10–12).  Plaintiff alleged that 15 of the delayed envelopes bore Jasso's signature but lacked a received date, evidencing Jasso's direct involvement.  (*Id*. at 10–11).  Plaintiff also claimed that the delay of his mail by Jasso was retaliatory, citing statements criticizing Plaintiff for filing appeals that inmate Robert Miller overheard from Library Technical Assistant, L. Lima.  (*Id*. at 8, 35–36).  As relief, Plaintiff sought compensatory and punitive damages.  (*Id*. at 16).

**B.  The Operative Pleadings**

On November 27, 2023, Defendant filed her MSJ.  (Doc. No. 31).  Supporting her MSJ, Defendant submits: (1) a memorandum of points and authorities (Doc. No. 31-2); (2) a statement of 36 undisputed material facts (Doc No. 31-1); (3) the declaration of J. Jasso (Doc. No. 31-3); (4) the declaration of L. Drapper (Doc. No. 31-4); (5) the declaration of K. Huffman (Doc. No. 31-5);

1    and (6) the declaration of Alexandria Faura (Doc. No. 31-6).

2            Defendant argues Plaintiff cannot establish a basis for a claim under § 1983 against

3    Defendant Jasso because there is no evidence that Defendant Jasso took any affirmative acts or

4    failed to act in a way that she was legally required to in connection with Plaintiff's mail.  First,

5    Defendant points out that Plaintiff's First Amendment mail claim is supported only by evidence

6    that Defendant Jasso's signature was on three envelopes of mail that were delayed, but ultimately

7    received by Plaintiff.  Second, Defendant contends that Plaintiff cannot establish that any of

8    Defendant Jasso's actions were taken in retaliation because: (1) there is no evidence to suggest

9    that Defendant had prior knowledge of Plaintiff's grievances; and (2) Plaintiff's grievances

10   relating to the delay of his mail were submitted _after_ the date Plaintiff alleges Defendant began

11   withholding his mail.  Thus, Plaintiff's grievances could not serve as the protected activity that

12   allegedly precipitated the delay of his mail.  Finally, as to his due process claim, Plaintiff cannot

13   establish that his mail was withheld pursuant to any policy or course of conduct by Defendant

14   Jasso.  Nor is there any evidence to suggest the delay in Plaintiff's mail was caused by any

15   actions taken by Defendant Jasso, intentional or unintentional.  Without any evidence to suggest

16   Plaintiff's mail was _withheld_ as opposed to _delayed_ by Defendant Jasso or any other prison

17   official, Plaintiff cannot demonstrate that he was entitled to receive notice.  Finally,  Defendant

18   Jasso asserts an entitlement to qualified immunity.

19           On December 29, 2023, Plaintiff filed his Opposition.  (Doc. No. 36).  In support, Plaintiff

20   submits: (1) a memorandum of points and authorities (_id_. at 2–6); (2) a response to Defendant's

21   undisputed material facts (_id_. at 7–8); (3) a statement of undisputed material facts (_id_. at 9–10);

22   (4) Plaintiff's own declaration (_id_. at 11-12); (5) the declaration of inmate Robert Miller (_id_. at

23   21-22); and (6) grievance appeals, letters, and an excerpt of the California Code of Regulations,

24   Title 15. (_id_. at 14-41).  Plaintiff admits to all but seven of Defendant's 36 undisputed facts.  In

25   support of his retaliation claim, Plaintiff contends he first complained about the delay in his mail

26   earlier than Defendant claims and submits a July 28, 2019 grievance (Appeal SATF-F-19-06288)

27   he lodged against non-party Lt. D. Lopez as evidence (Doc. No. 36 at 15) as well as the

28   declaration of inmate Miller who attests to overhearing a statement attributed to Jasso from

1  another correctional official, L. Lima (Doc. No. 36 at 21-22).

2      Thereafter, Defendant filed a Reply in Support of her MSJ.  (Doc. No. 43).  Defendant

3  submits the declaration of counsel along with copies of Plaintiff's responses to discovery (Doc.

4  No. 43-1), and Defendant's response and/or objections to certain evidence submitted by Plaintiff

5  in his opposition.  (Doc. No. 43-2).  Defendant notes that Plaintiff does not cite to any evidence as

6  to the facts he disputes, other than to one of the contested facts regarding his retaliation claim.  As

7  to the newly identified grievance Plaintiff lodged against non-defendant Lt. Lopez, in addition to

8  it contradicting Plaintiff's sworn responses to discovery, Defendant argues that there is no

9  evidence that Jasso was aware of this earlier grievance against Lt. Lopez.  Finally, Defendant

10  objects to inmate Miller's statements attributed to Jasso by another correctional official as

11  inadmissible hearsay.

## II. Summary Judgment Standard

13      The "purpose of summary judgment is to pierce the pleadings and to assess the proof in

14  order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith*

15  *Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate

16  when there is "no genuine dispute as to any material fact and the movant is entitled to judgment

17  as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment should be entered "after adequate

18  time for discovery and upon motion, against a party who fails to make a showing sufficient to

19  establish the existence of an element essential to that party's case, and on which that party will

20  bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The

21  moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of

22  material fact.  *Id.* at 323.  An issue of material fact is genuine only if there is sufficient evidence

23  for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might

24  affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477

25  U.S. 242, 248 (1986).

26      If the moving party meets its initial burden, the burden then shifts to the opposing party

27  to present specific facts that show there to be a genuine issue of a material fact.  *See* Fed R. Civ.

28  P. 56(e); *Matsushita*, 475 U.S. at 586.  An opposing party "must do more than simply show that

1  there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587.  The

2  party is required to tender evidence of specific facts in the form of affidavits, and/or admissible

3  discovery material, in support of its contention that a factual dispute exists.  Fed. R. Civ. P.

4  56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party is not required to establish a

5  material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be

6  shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

7  *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.

8  1987).  However, "failure of proof concerning an essential element of the nonmoving party's

9  case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

10       The court must apply standards consistent with Rule 56 to determine whether the

11  moving party demonstrated there is no genuine issue of material fact and showed judgment to be

12  appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

13  "[A] court ruling on a motion for summary judgment may not engage in credibility

14  determinations or the weighing of evidence."  *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir.

15  2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the

16  nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving

17  party.  *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002).  A mere scintilla

18  of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly

19  supported summary judgment motion.  *Anderson.*, 477 U.S. at 252.  However, where "opposing

20  parties tell two different stories, one of which is blatantly contradicted by the record" courts

21  "should not adopt that version of the facts for purposes of ruling on a motion for summary

22  judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

23       Plaintiff's verified complaint may serve as an affidavit in opposition to summary

24  judgment if based on personal knowledge and specific facts admissible in evidence.  *Lopez v.*

25  *Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc).  However, a complaint's conclusory

26  allegations unsupported by specific facts, will not be sufficient to avoid summary judgment.

27  *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001).  And,

28  where a plaintiff fails to properly challenge the facts asserted by the defendant, the plaintiff may

1   be deemed to have admitted the validity of those facts.  *See* Fed. R. Civ. P. 56(e)(2).

2          The undersigned has carefully reviewed and considered all arguments, points and

3   authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any,

4   objections, and other papers filed by the parties.  The omission of an argument, document, paper,

5   or objection is not to be construed that the undersigned did not consider the argument, document,

6   paper, or objection.  Instead, the undersigned thoroughly reviewed and considered the evidence it

7   deemed admissible, material, and appropriate for purposes of issuing these Findings and

8   Recommendations.

9                              **III.  UNDISPUTED MATERIAL FACTS**

10          Defendant provides a statement identifying 37 undisputed material facts.  (Doc. No. 31-1

11   at 1-2).  Each listed fact cites to sworn declarations, deposition testimony, and the operative

12   complaint.  (*See* generally *id*.).  In his Opposition, Plaintiff includes a response to Defendant's

13   statement of undisputed facts and his own statement of undisputed facts.  (Doc. No. 36 at 7–10).

14   Plaintiff contests seven of Defendant's material facts listed in her statement of undisputed

15   material facts.  For six of the contested facts, Plaintiff does not provide supporting evidence or an

16   explanation.  (*See id*. at 7–8).

17          Where Plaintiff's response to Defendant's statement of undisputed facts or his statement

18   of undisputed facts is based solely on conclusory statements or the FAC, and lacks detailed facts,

19   while Defendant provides detailed facts or documentary evidence in support, the Court generally

20   does not find Plaintiff's objections or statements of fact sufficient to establish a genuine dispute

21   of material fact.  *See Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc); *see also*

22   *FTC v. Publishing Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-

23   serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a

24   genuine issue of material fact.").  Having reviewed the record, the undersigned finds the

25   following facts to be material and undisputed, unless otherwise noted.

26   •   At all relevant times, Plaintiff was in the custody of the California Department of

27       Corrections and Rehabilitation ("CDCR") at Substance Abuse Treatment Facility and

28       State Prison ("SATF").  (Doc. No. 31-6 at 9-31 ("Spencer Depo. Tr.") at 15:11-16:01).

6

- At all relevant times, Defendant Jasso was employed by CDCR as an Office Assistant at the contraband desk in the mailroom at SATF. (Doc. No. 31-3 at 1 ¶ 2).

- In October 2019, Plaintiff noticed his mail began being delayed for an inordinate amount of time. (Doc. No. 12 at 9; Spencer Depo. Tr. at 32:25-33:06).

- Plaintiff claims that his mail was withheld because he had filed an administrative grievance against the mailroom staff. (Doc. No. 12 at 8–9; Spencer Depo. Tr. at 23:7-19).

- Plaintiff filed grievance log number SATF-G-19-7306 regarding the delay in his mail on November 27, 2019. (Doc. No. 31-6 at 44-57; Spencer Depo. Tr. at 33:7-17).

- Plaintiff filed grievance log number SATF-G-20-01007 regarding the delay in his mail. This grievance was received by the Office of Appeals at SATF on March 16, 2020. (Doc. No. 31-6 at 38-43; Spencer Depo. Tr. at 25:5-8).

- Plaintiff testified that he believed Defendant Jasso was responsible for withholding his mail because her initials appeared on the envelopes of some of his delayed mail. (Spencer Depo. Tr. at 44:13-17).

- Plaintiff admitted that he did not know if his mail was withheld, but that it was delayed in arriving to him. (Spencer Depo. Tr. at 26:3-5).

- Plaintiff testified in his deposition that he did not know the name of any other mailroom employee except for Defendant Jasso. (Spencer Depo. Tr. at 41:14-42:12).

- Plaintiff testified in his deposition that he did not know what Defendant Jasso's position was at SATF or whether she still worked at SATF. (Spencer Depo. Tr. at 37:03-38:09).

- Plaintiff testified in his deposition that Defendant Jasso's signature did not appear on every piece of mail that was delayed in its delivery. (Spencer Depo. Tr. at 43:24-44:24).

- There are seven envelopes that were allegedly delayed in their delivery to Plaintiff. (Doc. No. 31-6 at 4-7).

- Plaintiff eventually received all seven envelopes. (Doc. No. 31-6 at 4-7; Doc. No. 36 at 11).

- Of the seven envelopes, five of the envelopes have a substantial difference between the postmark date and the date that Plaintiff alleges he received the envelopes. (Doc. No. 31-

1  6 at 4-7; Spencer Depo Tr. at 19:11-20).

2  •  Defendant Jasso's initials did not appear on every piece of delayed mail.  (Doc. No. 31-6

3     at 4-7; Spencer Depo. Tr. at 43:24-44:3).

4  •  Plaintiff testified in his deposition that "a lot of envelopes" were delayed that he "didn't

5     save because it didn't have [any] signature."  (Spencer Depo. Tr. at 44:19-21).

6  •  Plaintiff testified in his deposition that he had "a lot of envelopes" that did not have a

7     signature that were "three, four, five months late."  (Spencer Depo. Tr. at 44:22-24).

8  •  Defendant Jasso's initials appear on correspondence addressed to Plaintiff from another

9     inmate in the custody of CDCR.  (Doc. No. 31-6 at 4-7; Doc. No. 31-3 at 2-3 ¶¶ 6, 13).

10 •  Defendant Jasso initialed the front of Plaintiff's envelopes because her position required

11    her to verify that Plaintiff and the inmate who sent the letter had approval to correspond

12    with each other.  (Doc. No. 31-3 at 3 ¶ 13).

13 •  Plaintiff alleges Defendant Jasso violated CDCR regulations[2] for allegedly failing to

14    notify him that his mail was being withheld.  (Doc. No. 12 at 9; Spencer Depo Tr. at 30:5-

15    10).

16 •  Defendant Jasso denies withholding any of Plaintiff's mail, during the relevant period.

17    (Doc. No. 31-3 at 2 ¶ 8).

18 •  Defendant Jasso was not instructed to withhold any of Plaintiff's mail, during the relevant

19    period.  (Doc. No. 31-3 at 2 ¶ 9).

20 •  Defendant Jasso denies having knowledge that Plaintiff's mail was withheld.  (Doc. No.

21    31-3 at 3 ¶ 12).

22 •  Defendant Jasso denies having knowledge that Plaintiff's mail was delayed.  (Doc. No.

23    31-3 at 2-3 ¶¶ 10, 12).

24 •  Prior to October 2019, Defendant Jasso had no knowledge of Plaintiff's grievance history

25    related to the mailroom.  (Doc. No. 31-3 at 2 ¶ 11).

26 •  Defendant Jasso denies taking any retaliatory actions towards Plaintiff as a basis for

27  _____

28  [2] Specifically, Plaintiff cites to tit. 15 CCR §§ 3131 and 3133.  These sections address general mail procedures within CDCR.

performing her duties or during the performance of her duties at the contraband desk. (Doc. No. 31-3 at 2 ¶ 11).

- As part of her duties at the contraband desk, Defendant Jasso handled inmate-to-inmate correspondence. (Doc. No. 31-3 at 1-2 ¶ 3; Doc. No. 31-4 at 2-3 ¶¶ 7, 9).

- When other mailroom staff determined that a piece of incoming mail was inmate-to-inmate correspondence, it was given to Defendant Jasso to verify that the respective inmates had approval to correspond with each other. (Doc. No. 31-3 at 1-2 ¶¶ 3, 5; Doc. No. 31-4 at 3 ¶ 10).

- If Defendant Jasso verified that both inmates had approval to correspond with each other, she initialed the envelope and returned the envelope to the mailroom staff, to signal that the correspondence approval had been checked and verified. (Doc. No. 31-3 at 1-3 ¶¶ 3, 5, 13; Doc. No. 31-4 at 2-3 ¶ 10).

- Incoming mail is delivered to SATF by the United States Postal Service employees after obtaining the mail from the post office in the city of Corcoran, California. (Doc. No. 31-5 at 2 ¶ 3; Doc. No. 31-4 at 2 ¶ 4).

- When the incoming mail arrives at SATF it is brought to the mailroom to be processed and sorted. (Doc. No. 31-5 at ¶ 4; Doc. No. 31-4 at 2 ¶ 5).

- Once the incoming mail arrives at the mailroom, it is initially sorted by housing facility. (Doc. No. 31-5 at 2 ¶ 5; Doc. No. 31-4 at 2 ¶ 5).

- There is a mailroom employee assigned to each housing facility at SATF, who is responsible for opening and processing the incoming mail for that specific housing facility. (Doc. No. 31-5 at 2 ¶ 5; Doc. No. 31-4 at 2 ¶¶ 5, 6).

- Once the mailroom employee finishes sorting and processing the incoming mail for the assigned housing facility, the mail is placed in mailbag for that specified housing facility. (Doc. No. 31-5 at 2 ¶ 5; Doc. No. 31-4 at 2 ¶ 8).

- The mailbag is taken to the Complex Control for that specific housing facility where the mail is sorted by housing unit by correctional officers. (Doc. No. 31-5 at 2 ¶ 6; Doc. No. 31-4 at 2 ¶ 8).

9

- After the incoming mail is sorted by housing unit, the Third Watch housing unit officers pick up the mail for their respective housing unit to distribute to the inmates. (Doc. No. 31-5 at 2 ¶ 7; Doc. No. 31-4 at 2 ¶ 8).

## IV. APPLICABLE LAW AND ANALYSIS

### A. First Amendment Mail

Prisoners have a First Amendment right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). A prison may nonetheless regulate mail in ways that impinge on that right if such regulation is reasonably related to legitimate penological interests, such as safety, order, and rehabilitation. *Id.* For example, prison officials may examine an inmate's mail without infringing his rights, *United States v. Wilson,* 447 F.2d 1, 8 n. 4 (9th Cir. 1971), or inspect non-legal mail for contraband outside the inmate's presence. *Witherow,* 52 F.3d at 265–66 (upholding inspection of outgoing mail). And binding precedent holds that "negligently mishandled or misdirected [nonconfidential] mail . . . is not actionable under section 1983." *Rhinehart v. Gomez*, 205 F.3d 1352 (9th Cir. 1999); *see also Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) as amended (May 5, 1999) ("a temporary delay in the delivery of [nonconfidential mailings], resulting from the prison official's security inspection, does not violate his First Amendment rights"); *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002) ("mere negligence on the part of prison officials is not actionable as a due process violation under § 1983"). In contrast, the "deliberate delay of legal mail may violate a prisoner's first amendment and due process rights," if the plaintiff can "show that he was injured by the denial of access." *Reynolds v. Potts*, 8 F.3d 29 (9th Cir. 1993) (emphasis added).

Jasso worked the contraband desk and received inmate-to-inmate correspondence from other mailroom staff who opened and inspected the mail. (Doc. No. 31-1, ¶ 5). After she verified an inmate had approval to correspond with another inmate, she would initial the front of the envelope to indicate "the inmates had approval to correspond with each other" and then she would "promptly return the envelope back to the mailroom staff responsible for the respective housing facility." (*Id*., ¶¶ 6,7). The envelopes that Jasso signed were letters sent to Plaintiff by other inmates from other institutions. (*Id*., ¶ 13). Her signature on the envelopes indicates [she]

10

1   verified that both Plaintiff and the inmate who sent the letter had approval to correspond with

2   each other." (*Id*.). Jasso attaches a true and correct copy of the CDCR 1074 approval forms

3   related to the respective envelopes that reflect Plaintiffs' approval to correspond with certain

4   inmates. (*Id*., ¶ 13, Exhibit A). After signing the envelopes, Jasso returned them to "mailroom

5   staff assigned" to Plaintiff's housing facility. (*Id*., ¶ 14).

6          Plaintiff produced seven articles of mail that were delayed in their delivery. Of the seven

7   articles of mail, five had substantial differences between the postmark date and the date Plaintiff

8   claims he received the envelope, and three contained Jasso's signature. (Spencer Depo. At 19:11-

9   19, 20). Jasso's initials do not appear on all the envelopes. (Doc. No. 31-6 at 4-7; Spencer Depo.

10  Tr. at 43:24-44:3). It is uncontroverted that Plaintiff eventually received the mail at issue in this

11  case. (Doc. No. 31-6 at 4-7; Doc. No. 36 at 11, ¶¶ 4-5). Further, the mail that was delayed was

12  from "other inmates, friends and family members" and thus, was nonconfidential and was not

13  legal mail. (*See* Doc. No. 12 at 13; *see also* Doc. No. 31-6 at 4-7; Doc. No. 31-3 at 1-3 ¶¶ 3, 5,

14  13).

15         Here, Plaintiff produces no evidence that any on his mail was withheld. Nor does Plaintiff

16  produce any evidence that Jasso was responsible for the delay of any mail. It is undisputed that

17  the reason Defendant's signature appears on three of the seven envelopes, is her position on the

18  contraband desk required her to verify that Plaintiff and the inmate had approval to correspond.

19  Plaintiff neither alleges let alone establishes that the delay in his mail resulted in any injury or

20  inhibited his access to the courts. *See Holmes v. Dreesen*, 2015 WL 627907, at *3 (D. Nev. Feb.

21  11, 2015) ("Therefore, any harm caused by a delay in receiving this legal mail from the state

22  court about an unrelated civil claim did not implicate Plaintiff's constitutional right of access to

23  the courts." (citing *Lewis v. Casey*, 518 U.S. 343, 354–55 (1996))), *aff'd*, 667 F. App'x 264 (9th

24  Cir. 2016). Even if Plaintiff can show that Jasso's inspection process delayed his mail, any

25  temporary delay caused by her security inspection, does not violate Plaintiff's First Amendment

26  rights. *Crofton v. Roe*, 170 F.3d at 961.

27         Based on the foregoing, the undersigned recommend the district court grant Defendant

28  Jasso summary judgment on Plaintiff's First Amendment mail claim.

**B.  First Amendment Retaliation**

The First Amendment guarantees a prisoner the right to file a grievance or access the courts.  *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Brodheim v. Cry*, 584 F. 3d 1262, 1269 (9th Cir. 2009).  Retaliating against an inmate for exercising this right is "prohibited as a matter of 'clearly established law." *Brodheim*, 584 F.3d at 1269 (citations omitted).  To prove a First Amendment retaliation claim, a plaintiff must demonstrate five elements: (1) he engaged in protected activity; (2) the state actor took an adverse action against the plaintiff; (3) a causal connection between the adverse action and the protected conduct; (4) the defendant's actions would chill or silence a person of ordinary fitness from protected activities; and (5) the retaliatory action did not advance a legitimate correctional goal. *Chavez v. Robinson*, 12 F.4th 978, 1001 (9th Cir. 2021) (quoting *Rhodes*, 408 F.3d at 567–68).

The adverse action must be of a sufficient nature that it would deter or "chill" a person of "ordinary firmness" in the exercise of his constitutional rights.  *Rhodes v. Robinson*, 408 F.3d 559, 568-69 (9th Cir. 2005).  The adverse action taken against the prisoner "need not be an independent constitutional violation.  The mere threat of harm can be an adverse action." *Watison*, 668 F.3d at 1114 (internal citations omitted).  A retaliatory motive may be shown by sufficiently convincing circumstantial evidence, as well as direct evidence.  *Bruce v. Ylst,* 351 F.3d 1283, 1288–89 (9th Cir. 2003); *McCollum v. Ca. Dep't of Corr. And Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011).  The causal connection between the adverse action and the protected conduct can also be inferred from the chronology of events.  *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).  But, depending on the facts presented, the mere timing of events may not be sufficient to establish causation.  *Id.*  And mere speculation that a defendant acted out of retaliation is not sufficient.  *Wood v. Yordy,* 753 F.3d 899, 904 (9th Cir. 2014) (citing cases).

In reviewing retaliation claims by a prisoner, courts must be mindful of avoiding "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt*, 65 F.3d at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).  Thus, courts must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for

1   conduct alleged to be retaliatory." *Id.* (quoting *Sandin*, 515 U.S. at 482).  Further, courts are

2   cautioned to "approach prisoner claims of retaliation with skepticism and particular care" lest

3   "virtually any adverse action taken against a prisoner by a prison official—even those otherwise

4   not rising to the level of a conditional violation—can be characterized as a constitutionally

5   proscribed retaliatory act." *Bacon v. Phelps*, 961 F.3d 533, 543 (2d Cir. 2020) (quoting *Dawes v.*

6   *Walker*, 239 F. 3d 489, 491 (2d Cir. 2001), overruled on other grounds by *Swierkiewicz v. Sorema*

7   *N.A.*, 534 U.S. 506 (2002)).

8          In his operative complaint, Plaintiff alleges Jasso intentionally delayed his incoming mail

9   due to his filing of a grievance.  (Doc. No. 12 at 8).  Plaintiff states he first noticed his mail was

10  being delayed by Defendant Jasso in October 2019.  (*Id.* at 9, ¶ 22).  Plaintiff states that inmate

11  Robert Miller overheard a conversation between L. Lima, Library Technical Assistant, and

12  Plaintiff during which Lima told Plaintiff "Jasso and staff always had something negative to say

13  about [Plaintiff], such as he's a complainer and whiner, and always filing appealing on staff."

14  (*Id.* at 8, ¶¶ 12-13; at 35-36; 36 at 21-22).

15         Defendant Jasso denies being aware of Plaintiff's grievance history relating to the

16  mailroom prior to October 2019, and denies she performed any of her job duties in the mailroom

17  in retaliation for any grievances that Plaintiff had filed.  (Doc. No. 31-3, ¶11).  In fact, Jasso

18  attests that she was aware that Plaintiff's mail was being delayed prior to the initiation of this

19  lawsuit.  (*Id.*, ¶ 10).

20         In his sworn deposition testimony, Plaintiff confirmed that his mail first started being

21  delayed in October 2019.  (Spencer Depo. at 23:1-6).  Plaintiff also confirmed that he submitted

22  grievances against Defendant Jasso and the mailroom regarding the delayed mail as Log No.

23  SATF-G-19-7306, dated November 27, 2019; and Log No. SATF-20-01007, dated March 16,

24  2020.  (Doc. No. 31-1 at 2;  Spencer Depo. at 20:25; 23:7-14).  Only Log No. SATF-20-01007,

25  dated March 16, 2020 mentioned Jasso.  However, both grievances were submitted <u>after</u> the date

26  Plaintiff alleged his mail began being withheld.  Given the date of Plaintiff's grievances, they

27  could not serve as the protected activity that allegedly precipitated the delay of Plaintiff's mail

28  starting in October 2019 that Plaintiff attributes to Jasso.  Thus, Plaintiff's retaliation claim fails

1  at the threshold requirement of establishing causation.  *See Kelley v. Corr. Corp. of Am.*, 750 F.

2  Supp. 2d 1132, 1143 (E.D. Cal. 2010) ("Logic demands that any protected activity engaged in by

3  a plaintiff that is the basis for a claim of retaliation must precede the defendant's retaliatory act.").

4        Even if Miller's statement recounting Lima's statement to Plaintiff is admissible,[3] Miller

5  does not state <u>when</u> he overheard the comment or, more importantly, when Jasso allegedly made

6  the statement.  Thus, while Lima's comments to Plaintiff may evince that Jasso disliked Plaintiff,

7  these comments alone fail to show that Jasso took any retaliatory action against Plaintiff for any

8  protected action, given the date Plaintiff filed grievances about the mailroom and the date when

9  Plaintiff claims Jasso started to delay his mail.

10        Plaintiff attempts to create an issue of fact by claiming for the first time in his Declaration

11  in Support of his Opposition that, contrary to the allegations in his operative complaint and his

12  deposition testimony, he first complained of his delayed mail on July 30, 2019, and attaches two

13  CDCR 22 Inmate Request for Interview Forms.[4]  (Doc. No. 36 at 14, 15).  Plaintiff also attaches a

14  copy of a December 6, 2019 response to a grievance alleging retaliation against Lt. D. Lopez

15  concerning events that occurred on September 10 and 11, when he was ordered by Lopez to

16  return to his housing unit while he was performing ADA official duties.  (*Id*.  No. 36 at 27).

17  Defendant objects to this evidence because Plaintiff failed to previously identify these documents

18  or produce them in discovery, and therefore they should not be considered pursuant to Federal

19  Rule of Civil Procedure 37(c).  *See* Fed. R. Civ. P. 37(c).

20        Even if the court accepts these documents, they fail to raise an issue of material fact to

21

22  [3] Defendant objects to inmate Miller's statements as inadmissible for the purpose of opposing Defendant Jasso's Motion because they are hearsay and cites to *Blair Foods, Inc. v. Ranchers Cotton Oil*, 601 F.2d

23  665, 667 (9th Cir. 1980) (hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions) and *Percival v. Clark*, No. 1-09-cv-01699-MJS PC, 2013 WL

24  238907, at *3 (E.D. Cal. Jan. 22, 2013) in support.  (Doc. No. 43 at 5).  A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed.R.Civ.P. 56(e); *Orr v. Bank of*

25  *Am.,* 285 F.3d 764, 773 (9th Cir. 2002). Unauthenticated documents and hearsay evidence are inadmissible, and consequently, may not be considered on summary judgment. *Orr,* 285 F.3d at 773–74,

26  778. Since Lima allegedly made the statements directly to Plaintiff, it is unclear why Plaintiff submitted inmate Miller's declaration.  Nonetheless, a plaintiff can testify to what a third party told them, but not to

27  prove the truth of the statement (which would be hearsay) unless it falls within an exception, such as the party-opponent exception.

28  [4] The second form is not legible.

1    deny summary judgment.  Unlike a grievance, an inmate's request for an interview submitted on a

2    CDCR-22 form does not fall within protected activity.  Further, nowhere does the CDCR 22 form

3    attribute any wrongdoing to Defendant Jasso, nor is there any evidence that Jasso was aware that

4    Plaintiff submitted CDCR-22 forms.  Further, Plaintiff fails to articulate how his grievance

5    against Lt. Lopez about events wholly unrelated to the mailroom could possibly motivate

6    Defendant Jasso to take any retaliatory action against him.  Plaintiff presents no evidence that

7    Defendant Jasso knew of  the grievance against Lt. Lopez.  There is no evidence that Lt. Lopez

8    ever spoke to Defendant Jasso about the grievance, and no evidence that Lt. Lopez even worked

9    in the mailroom during the time at issue.  This is fatal to Plaintiff's retaliation claim.  *See Corales*

10   *v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (finding that plaintiff must offer evidence the

11   defendant knew about the protected conduct to raise a triable issue as to motive).

12        Additionally, Plaintiff testified in his deposition that the reason he believed Defendant

13   Jasso was responsible for the delay of all his mail was because her initials appeared on the

14   envelopes of some of his delayed letters.  (Spencer Depo. Tr. at 44:13–17).  It is undisputed the

15   reason Jasso's initials appeared on some of Plaintiff's mail is because her position required her to

16   affix her initials to the envelopes after she confirmed Plaintiff had approval for the inmate-to-

17   inmate correspondence.  Plaintiff also admitted he did not know the name of any other mailroom

18   employee besides Defendant Jasso.  (*Id*. at 41:14–42:12).  Further, there is no evidence as to

19   when Jasso received the mail that she inspected to prove that any delay was attributable to her

20   action or inaction.  This constitutes exactly the type of "mere speculation" the Ninth Circuit has

21   repeatedly rejected.  *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases); *see also*

22   *Carmen v. San Francisco Unified Sch. Dist*., 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's

23   belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is

24   no more than speculation.").

25        Moreover, Plaintiff fails to put forth evidence refuting Defendant's declaration in which

26   she denies withholding any of Plaintiff's mail during the relevant period and having no

27   knowledge that Plaintiff's mail was withheld or delayed.  (Doc. No. 31-3 at 2 ¶ 8; *id*. at 2–3 ¶¶

28   10, 12).  Indeed, the fact that Jasso approved Plaintiff's inmate-to-inmate correspondence is

1    evidence that she had no bias against Plaintiff.  Thus, Plaintiff cannot establish the required "but-

2    for" causation.  *See Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (the plaintiff must establish "but-

3    for causation," meaning "the adverse action against the plaintiff would not have been taken absent

4    the retaliatory motive"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012)

5    (Plaintiff "must allege facts ultimately enabling him to 'prove the elements of retaliatory animus

6    as the cause of injury.'").  Furthermore, Plaintiff agreed in his response to Defendant's statement

7    of undisputed facts that Defendant did not take any retaliatory actions towards Plaintiff during the

8    performance of her duties.  (*Compare* Doc. No. 31-1 at 5, ¶ 26 *with* Doc. No. 36 at 8, Plaintiff

9    agrees with UF #26).

10    Accordingly, the undersigned recommends the District Court grant Defendant's MSJ as to

11    Plaintiff's retaliation claim.

12    **C.  Fourteenth Amendment Due Process**

13    The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life,

14    liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "The requirements of

15    procedural due process apply only to the deprivation of interests encompassed by the Fourteenth

16    Amendment's protection of liberty and property."  *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).

17    "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest

18    protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of

19    process.'"  *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa*

20    *Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

21    "It is undisputed that withholding delivery of inmate mail must be accompanied by

22    minimum procedural safeguards." *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002).  Inmates

23    have "a Fourteenth Amendment due process liberty interest in receiving notice that [their]

24    incoming mail is being <u>withheld</u> by prison authorities." *Id*. (internal quotations and citations

25    omitted) (emphasis added).  And a due process violation occurs "only if the failure to provide

26    notice was pursuant to prison policy, mere negligence on the part of prison officials is not

27    actionable as a due process violation."  *See Calihan v. Adams*, 2011 WL 284467, at *6 (E.D. Cal.

28    Jan. 26, 2011) (cleaned up) (citing *Sorrels*, 290 F.3d at 972).

1    In contrast, there is no federal constitutional liberty interest in compliance with state

2    prison regulations.  *Solomon v. Felker*, 2013 WL 5375538, at *12 (E.D. Cal. Sept. 24, 2013)

3    ("Plaintiff's allegation that the defendants failed to adhere to the prison's own institutional

4    policies and procedures does not, by itself" give rise to a constitutional violation); *Sandin v.*

5    *Conner*, 515 U.S. 472, 481–82 (1995) (recognizing prison regulations are "primarily designed to

6    guide correctional officials in the administration of a prison" and are "not designed to confer

7    rights on inmates"); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) ("[A] failure to

8    adhere to administrative regulations does not equate to a constitutional violation."); *see also*

9    *Armstrong v. Warden of USP Atwater*, 2011 WL 2553266, at *8 (E.D. Cal. June 24, 2011) (citing

10    same).  Indeed, Title 15 of the California Code of Regulations, which includes regulations

11    governing the administration of state prisons, does not confer a private right of action for inmates

12    to sue to enforce the regulations or to obtain damages.  *Vasquez v. Tate*, 2012 WL 6738167, at *9

13    (E.D. Cal. Dec. 28, 2012) (finding no federal due process violation based on prison's failure to

14    comply with Title 15 because no authority establishes the existence of a private right of action).

15    Here, Plaintiff's due process claim is predicated upon Defendant's alleged withholding of

16    Plaintiff's mail in violation of prison procedures.  (*See, e.g.,* Doc. No. 12 at 13) ("Defendant's

17    actions were in contravention of Title 15, D.O.M., Policy,[5] and therefore did not reasonably

18    advance a legitimate penological purpose.").  First, Plaintiff presents no evidence that his mail

19    was withheld or disallowed.  Instead, at most, some of his mail was delayed.  Further, even if

20    Jasso's actions violated a CRCR regulation (not conceded) this does not amount to a

21    constitutional violation.  As noted, Title 15 does not give rise to a private cause of action.

22    Finally, because "Plaintiff does not maintain that the alleged misconduct was pursuant to prison

23    policy[, he] has not stated a Due Process violation under Section 1983."  *Jackson v. Medina*, 2016

24    WL 7638200, at *6 (C.D. Cal. Oct. 31, 2016), *report and recommendation adopted*, 2017 WL

25    43919 (C.D. Cal. Jan. 3, 2017).

26

27

28

---

[5] California Code of Regulations, title 15, section 3136 (a) provides that if mail is "withheld or disallowed, the inmate shall be informed."

17

1    Accordingly, the undersigned recommends that Defendant's MSJ be granted as to

2  Plaintiff's Fourteenth Amendment Due Process Clause claim concerning the delay of Plaintiff's

3  mail without notice.

4    **D. Qualified Immunity**

5    In the alternative, Defendant asserts that she is entitled to qualified immunity in this case

6  because no official in her position would believe that their conduct violated Plaintiff's

7  constitutional rights under the circumstances.

8    A government official is entitled to qualified immunity under Section 1983 unless (1) the

9  official "violated a federal statutory or constitutional right, and (2) the unlawfulness of his

10  conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589

11  (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *Harlow v. Fitzgerald*, 457 U.S.

12  800, 817 (1982).  To demonstrate that a right was "clearly established" requires a showing that

13  the statutory or constitutional question was "beyond debate," such that every reasonable official

14  would understand that what he is doing is unlawful.  *Wesby*, 138 S. Ct. at 589; *Vos v. City of

15  Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018).  This standard is "demanding" and protects

16  "all but the plainly incompetent or those who knowingly violate the law."  *Wesby*, 138 S. Ct. at

17  589 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "[A] court typically should identify a

18  case where an officer acting under similar circumstances as [the defendant] was held to have

19  violated the constitutional right at issue."  *S.B v. County of San Diego*, 864 F.3d 1010, 1015 (9th

20  Cir. 2017).  "Even when no case is 'directly on point,' courts may compare relevant factors to

21  determine whether every reasonable officer should have known the conduct in question was

22  unlawful."  *Anderson v. Virga*, 2018 WL 1556806, *2 (E.D. Cal. Mar. 30, 2018) (citing *Isayeva v.

23  Sacramento Sheriff's Dep't*, 872 F.3d 938, 946–47 (9th Cir. 2017).  The plaintiff bears the burden

24  of establishing that the right alleged was clearly established.  *Moran v. Washington*, 47 F.3d 839,

25  844 (9th Cir. 1998).

26    As discussed *supra*, the Court finds the undisputed facts show that Plaintiff failed to put

27  forth sufficient evidence to establish a First or Fourteenth Amendment claim for the delay of his

28  mail or a First Amendment claim for retaliation.  Thus, because the Court finds no constitutional

18

1    violation, the Court need not address the second prong.

2        Accordingly, it is **RECOMMENDED**:

3        1.    The District Court **GRANT** Defendant's motion for summary judgment (Doc. No.

4            31).

5        2.    Judgment be entered in Defendant's favor and the case closed.

6                            **NOTICE TO PARTIES**

7        These Findings and Recommendations will be submitted to the United States District

8    Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

9    after being served with a copy of these Findings and Recommendations, a party may file written

10   objections with the Court.  *Id.*; Local Rule 304(b).  The document should be captioned,

11   "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen**

12   **(15) pages**.  The Court will not consider exhibits attached to the Objections.  To the extent a party

13   wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its

14   CM/ECF document and page number, when possible, or otherwise reference the exhibit with

15   specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by

16   the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. §

17   636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the

18   waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

19

20   Dated:    December 18, 2025

21                            HELENA M. BARCH-KUCHTA
                             UNITED STATES MAGISTRATE JUDGE
22

23

24

25

26

27

28